IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES BRIAN WRIGHT, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:11-0464 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| J&S EXTRADITION SERVICES, LLC, | ) | |
| et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Plaintiff, a federal inmate at the Tucson, Arizona facility ("USP Tucson"), filed this pro

se action under 42 U.S.C. § 1983 ("Section 1983") against the Defendants: J&S Extradition

Service ("J&S"), a Tennessee inmate transportation company; Sam Wright, a J&S extradition

agent; Kimberly Kay Plung and Veronica Buchanan, J&S employees; and Kat Walker, a

Sebastian County, Arkansas Sheriff's Office ("SCSO") employee, in their individual and official

capacities. Plaintiff asserts an Eighth Amendment claim for cruel and unusual punishment

during his voluntary extradition from USP Tucson to Sebastian County, Arkansas. Plaintiff

alleges that during his extradition, Wright denied him the right to sleep in a bed, medical

treatment, adequate food, sanitation, the ability to stretch his legs, and use of the restroom.

Plaintiff also alleges that Wright subjected him to excessive and extended periods of heat,

refused to adjust his leg restraints, handcuffed him to a gas pump, taunted him, and placed him in

a four foot cage. Plaintiff asserts that these acts were indifferent to his asthmatic condition.

Plaintiff further alleges that Defendant Walker failed to investigate J&S before contracting with

them to extradite Plaintiff. Plaintiff finally alleges that Walker's failure constitutes deliberate

1

indifference to Plaintiff's serious medical condition and exposure to substantial risks of serious harm.

Before the Court is Defendant Walker's motion to dismiss (Docket Entry No. 55), contending, in sum: (1) that Plaintiff's claim is a negligence claim, not a Section 1983 claim; (2) that Walker cannot be vicariously liable under Section 1983; (3) that Plaintiff fails to state sufficiently a claim for physical injury, as required under 42 U.S.C. § 1997e(e); and (4) that Walker is entitled to qualified immunity.

In response (Docket Entry No. 59), Plaintiff contends, in sum: (1) that Walker acted with deliberate indifference, exceeding mere negligence; (2) that Walker is vicariously liable in her official capacity under Section 1983; (3) that Plaintiff has alleged sufficient physical injuries under Section 1997e to support his claims; and (4) that Walker is not entitled to qualified immunity.

### A.    Analysis of the Complaint

Plaintiff, an inmate at the Tucson federal facility, agreed to be extradited to Sebastian County, Arkansas on state forgery charges. (Docket Entry No. 29, Complaint, at ¶¶ 7,16-17 and Exhibit G, attached thereto at 86). Kat Walker, a Sebastian County jail employee, contracted with J&S to extradite Plaintiff to Sebastian County. Id. at ¶¶ 18-19. Plaintiff alleges that Walker admitted that she did not investigate J&S or its extradition agents prior to contracting with J&S. Id. at ¶¶ 20-21.

On or about February 22, 2011, Sam Wright, a J&S extradition agent, arrived at the Tucson federal facility to transport Plaintiff to Sebastian County. Id. at ¶ 22-23. Both Plaintiff and USP Tucson medical staff informed Wright that Plaintiff suffered from chronic asthma, edema, bipolar disorder, and a hypertension condition that required monitoring. Id. at ¶ 23.

2

Wright was also informed that Plaintiff was prescribed Lisinopril, Hydrochlorothiazide, Elavil, and Flovent and Proventol asthma inhalers. Id. at ¶ 24. Plaintiff was required to take this medication during transportation. Id. Wright was also advised that Hydrochlorothiazide caused frequent urination. Id., Exhibit A at 47.

The Plaintiff was handcuffed, belly-chained, shackled, and placed in the rear of a transport van "in a four foot by two foot cage". Id. at ¶ 25. Plaintiff requested to be placed in the side of the van because he was previously a passenger in a transport van that was rear-ended. Id. at ¶ 26. Wright denied that request and "tapped" the van's brakes whenever vehicles were near its rear. Id. at ¶¶ 26, 28.

The next day, Wright stopped in the parking lot of a convenience store and slept. Id. at ¶ 29. Plaintiff alleges that this left him, "prone to unseen dangers or other harm that could have occurred during that time". Id. Plaintiff was unable to sleep in the rear of the van. Id. at ¶ 30. Before their departure, Wright allowed Plaintiff to urinate, but did not allow him to defecate. Id. at ¶ 31. Wright also denied Plaintiff's request to stretch his cramping legs. Id. at ¶ 32.

Wright next stopped at a McDonald's restaurant and gave Plaintiff a small cup of water, a small sausage biscuit, and permitted him to take his medications. Id. at ¶ 33. Later, Plaintiff asked to use the restroom, but Wright denied that request, noting that they were approximately an hour from their destination. Id. at ¶ 34. Plaintiff alleges that he was thus forced to urinate in the McDonald's cup before his arrival in Sebastian County. Id.

In March 2011, Walker again contracted J&S to return Plaintiff from Sebastian County to USP Tucson. Id. at ¶ 35. On March 31, 2011, Wright retrieved Plaintiff for transportation back to Arizona. Id. at ¶ 36. Wright was advised again of Plaintiff's medical condition. Id. at ¶ 37. Wright also transported another inmate along with Plaintiff. Id. at ¶ 38. Wright departed from

3

Sebastian County, allegedly "swerving all over the road, driving erratically and dangerously." Id. at ¶ 39. Wright stopped at a convenience store and separately escorted each inmate to the restroom, leaving one inmate unsupervised. Id.

Wright stopped in the parking lot to sleep and "left himself [Wright] and [the] two other prisoners prone to unsafe conditions, and potentially hazardous conditions." Id. at ¶ 40. According to Plaintiff, Wright "had the heat up excessively for a long period of time," causing Plaintiff and the other inmate to sweat profusely. Id. at ¶ 41. Wright initially denied the inmates' several requests to reduce the temperature, but later complied. Id.

The Plaintiff informed Wright that he was experiencing swelling in his hands and feet due to edema. Id. at ¶ 42. Plaintiff asked Wright to loosen his shackles to alleviate the swelling, but Wright refused. Id. As a result, Plaintiff suffered severe headaches due to his hypertension and the swelling. Id. at ¶ 43. Plaintiff informed Wright of the swelling and that his blood pressure needed to be monitored, but Wright ignored him. Id.

On April 1, 2011, Plaintiff was placed in a holding cell in Louisiana. Id. at ¶ 44. While there, Plaintiff suffered a nose bleed, and a nurse found Plaintiff's blood pressure to be 140/100. Id. at ¶ 46. Plaintiff complained of pain and blistering in his feet, and the nurse determined that the blisters were caused by perspiration and Plaintiff not regularly changing his socks. Id. at ¶¶ 47-48. According to Plaintiff, Wright did not allow Plaintiff the opportunity at any time to wash his hands after use of the restroom, brush his teeth, or perform the most basic hygiene. Id. at ¶ 49. Plaintiff stayed the night in the holding cell and was not allowed to shower or shave. Id. at ¶ 50. Nor was he allowed to have a blanket or a mat to rest. Id.

4

The next morning, Plaintiff informed Wright of his blood pressure condition and told Wright that he was unable to sleep the night before. Id. at ¶ 51. Wright did not seek any instructions from the jail staff regarding Plaintiff's health before departing. Id. at ¶¶ 52-53.

Wright stopped at a rest area in Missouri to allow Plaintiff to urinate after repeated denials. Id. at ¶¶ 54-55. Wright did not allow Plaintiff to defecate, causing Plaintiff severe stomach cramps. Id. at ¶ 56. Plaintiff "was handcuffed, shackled, and belly-chained with no means of protection," and Wright left his weapon in the van while he escorted Plaintiff by civilians on the way to the restroom. Id. at ¶ 55. After exiting the restroom, Plaintiff informed Wright that his legs and feet were swelling and that the shackles were too tight, but Wright denied Plaintiff's request to loosen his shackles, resulting in pain in Plaintiff's right leg. Id. at ¶ 57. Plaintiff then lay on his back upon returning to the van, in an effort to ease the pain and swelling. Id. at ¶ 58. Wright then slept in the van, "with civilians all around him taking (sic) unreasonably dangerous risk with the plaintiff's safety and wellbeing." Id. at ¶ 59. Again, Plaintiff was unable to sleep. Id. at ¶ 60. Plaintiff requested to use the restroom when Wright awoke several hours later. Id. at ¶ 61. Wright allowed Plaintiff to urinate and placed him in the side cage of the van. Id.

Plaintiff also complained that he was left unprotected when Wright went into a convenience store, handcuffing Plaintiff to a fuel pump and having Plaintiff pump fuel into the van. Id. at ¶¶ 64-66. Wright stated that he read Plaintiff's legal documents and asked Plaintiff to draft legal documents in connection with Wright's child support, child custody, and child visitation action. Id. at ¶¶ 69, 72-74. Plaintiff denied Wright's request. Id. at 75. Wright allegedly became angry and sprayed an aerosol deodorant into the rear of the van. Id. at ¶¶ 75-76. Plaintiff experienced headaches and difficulty breathing from exposure to the spray. Id. at ¶

5

77. Plaintiff told Wright of his condition and requested his asthma inhalers, but his request was denied by Wright. Id. at ¶ 77-78.

An hour later, Wright allowed Plaintiff to exit the van and use the restroom. Id. at ¶ 79. Wright promised he would allow Plaintiff to use his inhalers, to smoke, and to converse with civilian females at rest stops if Plaintiff assisted him with the child support action. Id. at ¶ 80. Plaintiff agreed, as he feared angering Wright. Id. at ¶ 81.

Wright then partially un-cuffed Plaintiff, giving him a notebook and a pen to draft documents in the child support action. Id. at ¶ 82. Wright then stopped at a restaurant, leaving the Plaintiff, "unattended, unsupervised, unprotected, and uncuffed in [the] van with it's (sic) windows up." Id. at ¶ 83. Wright gave Plaintiff a dessert upon his return. Id. at ¶ 84. Wright stopped a few hours later to purchase a cup of coffee, but refused Plaintiff's request for lunch, informing Plaintiff that he was only required to supply Plaintiff with fourteen grams of food per day. Id. at ¶ 85.

At the next stop, Wright asked Plaintiff "how long it had been since he had engaged in sexual relations." Id. at ¶ 89. Plaintiff alleges that Wright invited Plaintiff to masturbate before him. Id. at ¶ 90. Wright later told Plaintiff that if he could have someone send $150 to Plaintiff, Wright would deliver Plaintiff directly to USP Tucson. Id. at ¶ 97. Plaintiff gave Wright his sister's telephone number and address, and Wright sent a text message, posing as Plaintiff, requesting her to send $350 by Western Union. Id. at 98. Plaintiff's sister agreed. Id.

Plaintiff again asked to use the restroom. Id. at ¶ 102. Wright denied his request, and Plaintiff relieved himself in a 20 ounce bottle. Id. At the next stop, Wright again invited the Plaintiff to masturbate before him. Id. at ¶ 103. After Plaintiff declined, Wright masturbated in front of Plaintiff. Id. at ¶¶ 103-105.

6

On April 3, 2011, Plaintiff arrived at USP Tucson. Id. at ¶ 106. Wright threatened Plaintiff to direct Plaintiff's sister to send the money to Wright. Id. Plaintiff however telephoned his sister and advised her not to send the money. Id. at ¶ 107. Plaintiff alleges that he was not allowed to wash his hands after use of the restroom, "to shave, shower, brush his teeth or complete even the basic human needs". Id. at ¶ 108. Plaintiff further alleges that "when he was fed, [he] was deprived of adequate meals." Id. at ¶ 110.

### B.    Conclusions of Law

Upon a motion to dismiss, the Court must accept the complaint's factual allegations as true and construe the complaint liberally in favor of the plaintiff. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Despite such liberal construction, a court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements'" of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). Indeed, "it is not…proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated…laws in ways that have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan

v. Allain, 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement". Id. at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'". Id. at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. at 555, . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-1950.

As the Sixth Circuit stated, "[a] motion under rule 12(b)(6) is directed solely to a complaint itself . . . [.]" Sims v. Mercy Hosp., 451 F.2d 171, 173 (6th Cir. 1971). Thus, "when deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." Armengau v. Cline, No. 99-4544, 7 Fed. Appx. 336, 343 (6th Cir. March 1, 2001). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for

8

purposes of Rule 12(b)(6)." Id. at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Id. (citations omitted).

Pro se pleadings, as here, are to be liberally construed. Martin v. Overton, 391 F.3d 710, 712 (6th Cir.2004) (citing Haines v. Kerner, 404 U.S. 519 (1972)). "Notwithstanding, pro se complaints must satisfy basic pleading requirements because 'liberal construction does not require a court to conjure allegations on a litigant's behalf.'" Rahman El v. First Franklin Financial Corp., No. 09-cv-10622, 2009 WL 3876506, at *5 (E.D.Mich. Nov. 17, 2009) (citing Martin, 391 F.3d at 714); see also Copeland v. Ocwen Bank, No. 06-14817, 2007 WL 496448 (E.D. Mich. Feb. 12, 2007) ("Even pro se litigants must meet minimum standards…The court is 'not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions.'") (citations omitted).

1. Plaintiff's claims against Walker in her official capacity

Defendant Walker is sued in both her individual and official capacities. Plaintiff's claims against Defendant Walker in her official capacity are, in essence, against Sebastian County, of which Walker is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents….").

In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), the Supreme Court rejected the heightened pleading requirements in lawsuits against local governments. The Court reasoned that it is "impossible to square the 'heightened pleading standard'. . . with the liberal system of 'notice pleading' set up by the Federal Rules." Id. at 168.

9

The Federal Rules of Civil Procedure provide for a liberal system of notice pleading. Id.; see also, Fed. R. Civ. P. 8 (a). The Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Vector Research, Inc. v. Howard & Howard Attys. P.C., 76 F.3d 692, 697 (6th Cir. 1996).

The Sixth Circuit, however, has interpreted Leatherman as requiring a plaintiff's complaint against an individual defendant in her official capacity to allege sufficient facts of the existence of a particular policy, practice, or custom which directly caused the plaintiff's injury. Moreno v. Metro. Gen. Hosp., 210 F.3d 371, No. 99-5205, 2000 WL 353537, at *3 (6th Cir. Mar. 28, 2000) ("If the plaintiff's complaint fails to allege sufficient facts to demonstrate the existence of a particular policy, practice or custom which directly caused the decedent's injury, they have failed to state a claim against the individual defendants in their official capacity.").

While counties may not be held vicariously liable under Section 1983 for the actions of their employees, in accord with Leatherman, they "may be held directly liable for a constitutional violation committed through a [county] policy or practice." Stone v. City of Grand Junction, 765 F. Supp. 2d 1060, 1071 (W.D.Tenn. 2011) (quoting Jones v. Muskegon County, 625 F.3d 935, 946 (6th Cir. 2010)); Monell v. Dept of Social Servs., 436 U.S. 658, 690-694 (1978) (brackets omitted). Thus, "[i]n this case, where no formal policy exists, the critical question is whether there is a particular custom or practice that, although not authorized by written law or express [county] policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." Jones, 625 F.3d at 946 (citations and quotation marks omitted) (emphasis added).

10

Plaintiff alleges that Walker admitted in a telephone conversation with Plaintiff that, "it was her custom and practice not to investigate third party contractors, as she goes on the 'honor system.'" (Docket Entry No. 60 at 29). Plaintiff further alleges that Walker admitted "she never investigated [J&S] before the plaintiff was transported or at any other time during their professional relationship." Id. Yet, her failure does not demonstrate that Sebastian County had a permanent and well-settled custom of deliberate indifference through its failure to investigate contractors. "There is an analytical distinction between being deliberately indifferent as to one particular incident, and having a 'policy' of always being deliberately indifferent to unconstitutional actions. A [county] could be found to have a policy of failing to act in the face of repeated constitutional violations. But it could also be found to have acted reasonably, or even negligently, in a particular case, thus precluding liability." Doe v. Claiborne County, 103 F.3d 495, 508-509 (6th Cir. 1996); Jones, 625 F.3d at 946 (holding that evidence presented by plaintiff that several inmates' medical requests were ignored by jail personnel did not constitute a custom or practice); Fisher v. County of Macomb, No. 2:08-cv-13844, 2011 WL 2414413, at *8 (E.D. Mich. Jun. 14, 2011) (holding that an individual defendant's negligence or deliberate indifference cannot sustain a claim against a county); see also Walker v. City of Kalamazoo, No. 1:10-cv-574, 2011 WL 2414330, at *3 (W.D.Mich. Jun. 10, 2011) (stating that a "plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training…was deficient and likely to cause injury.'") (citation omitted).

Viewed in a light most favorable to Plaintiff, the Court concludes that Walker's individual conduct could demonstrate that she customarily fails to investigate contractors. Yet, Plaintiff does not sufficiently allege that his rights were violated by a policy or custom of

11

Sebastian County so permanent and well-settled as to constitute a custom or usage with the force of law. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Thus, this Court concludes that Plaintiff's Eighth Amendment claim against Walker in her official capacity should be dismissed.

> 2. Plaintiff's claims against Walker in her individual capacity

For a Section 1983 claim against Walker in her individual capacity, Plaintiff must plead: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Flag Bros. v. Brooks, 436 U.S. 149, 155-56 (1978); Black v. Barberton Citizens Hosp., 134 F.3d 1265, 1267 (6th Cir. 1998). Both elements of this two-part test must be met to support a claim under Section 1983. See Christy v. Randlett, 932 F.2d 502, 504 (6th Cir.1991).

The first step in evaluating a § 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). If plaintiff cannot establish that he was deprived of his constitutional rights, then it is not necessary to address the second prong of the two-part test set forth in Parratt. The Plaintiff in this action alleges Eighth Amendment violations for deliberate indifference to serious medical needs and harsh conditions of confinement.

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

12

<u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976) (citation and footnotes omitted). As to an inmate's safety, the Sixth Circuit has held that "[o]fficials act with deliberate indifference if they know of a substantial risk to an inmate's safety, yet disregard that risk by failing to take reasonable measures to abate it." <u>Lewis v. McClennan</u>, 7 Fed.Appx. 373, 375 (6th Cir. 2001) (<u>citing</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

Plaintiff must therefore allege that Walker knew that there was a strong likelihood that Wright would deny Plaintiff medical treatment for a serious condition, or subject him to a substantial risk of serious harm, and failed to abate the risk. <u>Doe v. Magoffin County Fiscal Court</u>, 174 Fed.Appx. 962, 970 (6th Cir. 2006) (<u>citing</u> <u>Doe v. Claiborne County</u>, 103 F.3d 495, 513 (6th Cir. 1996)). Further, Plaintiff must also allege that Walker "'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" <u>Harvey v. Campbell County</u>, No. 09-5041, 2011 WL 1789955, at *6 (6th Cir. May 10, 2011) (citations omitted); <u>Doe v. Claiborne County</u>, 103 F.3d at 513.

Plaintiff alleges that Walker, through a recorded conversation with Plaintiff "openly admitted that it was the [c]ustom and or [p]ractice not to investigate contract bidders...[h]ad this investigation taken place, it would have been determined that [J&S]...had an agent employed...that had previously been charged with assault on inmates during transport." (Docket Entry No. 29 at ¶ 144). Plaintiff alleges that Walker admitted that she knew "Defendant Agent Sam Wright had a recorded history of violence with inmates and civilians". (Docket Entry No. 60 at 28).

Plaintiff does not allege that Walker either encouraged or was directly involved in Wright's alleged misconduct. Walker's failure to investigate J&S could constitute negligence,

13

but is not deliberate indifference. Thus, the Court concludes that Plaintiff fails to state a claim against Walker in her individual capacity.

### 3. Plaintiff's request to amend complaint

Plaintiff requests that "in the alternative the court should permit plaintiff to amend his complaint to the extent he has not adequately alleged his constitutional claims of violation against defendants as effectively as an attorney can do." (Docket Entry No. 60 at 32). Such a request is not a valid motion to amend. "'What [Plaintiff] may have stated, almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend...Plaintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'" PR Diamonds, Inc. v. Chandler, 91 Fed. Appx. 418, 444 (6th Cir. 2004) (quoting Begala v. PNC Bank, Ohio, N.A, 214 F.3d 776, 784 (6th Cir. 2000)) (emphasis in original). Thus, the Court concludes that Plaintiff's request is not a valid motion to amend.

For the reasons stated above, the Court concludes that Defendant's motion to dismiss (Docket Entry No. 55) should be granted, and the Plaintiff's motion in opposition (Docket Entry No. 59) should be denied. Plaintiff's motion for preliminary injunction (Docket Entry No. 58) and all other motions should be denied, as moot.

An appropriate Order is filed herewith.

**ENTERED** this the _30th_ day of March, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge

14