IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES BRIAN WRIGHT, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:11-0464 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| J&S EXTRADITION SERVICES, LLC, | ) | |
| et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Plaintiff, a federal inmate at the Tucson, Arizona facility ("USP Tucson"), originally filed this pro se action under 42 U.S.C. § 1983 ("Section 1983") against the Defendants: J&S Extradition Service ("J&S"), a Tennessee inmate transportation company; Sam Wright, a J&S extradition agent; Kimberly Kay Plung and Veronica Buchanan, J&S employees; and Kat Walker, a Sebastian County, Arkansas Sheriff's Office ("SCSO") employee, in their individual and official capacities. In his amended complaint (Docket Entry No. 29), Plaintiff asserts an Eighth Amendment claim for cruel and unusual punishment during his voluntary extradition from USP Tucson to Sebastian County, Arkansas. Specifically, Plaintiff alleges that during his extradition, Wright denied him the right to sleep in a bed, medical treatment, adequate food, sanitation, the ability to stretch his legs, and use of the restroom. Plaintiff also alleges that Wright subjected him to excessive and extended periods of heat, refused to adjust his leg restraints, handcuffed him to a gas pump, taunted him, and placed him in a four foot cage. Plaintiff asserts that these acts were indifferent to his asthmatic condition. Plaintiff further alleges that Defendant Walker failed to investigate J&S before contracting with them to extradite

1

Plaintiff. Plaintiff finally alleged that Walker's failure constituted deliberate indifference to Plaintiff's serious medical condition and exposure to substantial risks of serious harm.

In earlier proceedings, by Order entered March 30, 2012 (Docket Entry No. 115,), the Court granted Defendant Walker's motion to dismiss, and found that any appeal of that Order would not be in good faith as required by 28 U.S.C. §1915(a)(3). Accordingly, judgment was entered on April 2, 2012 (Docket Entry No. 116). Petitioner then filed a motion for reconsideration (Docket Entry No. 123) that the Court denied. (Docket Entry No. 126).

Before the Court is Plaintiff's motion for relief from judgment under Fed. R. Civ. P. 60(b), contending, in sum, that the Court should vacate the judgment and allow Plaintiff to pursue his Eighth Amendment claims against the remaining Defendants: J&S, Wright, Buchanan, and Plung. (Docket Entry No. 125).

### A. Analysis of the Complaint

Plaintiff, an inmate at the Tucson federal facility, agreed to be extradited to Sebastian County, Arkansas on state forgery charges. (Docket Entry No. 29, Complaint, at ¶¶ 7,16-17 and Exhibit G, attached thereto at 86). Kat Walker, a Sebastian County jail employee, contracted with J&S to extradite Plaintiff to Sebastian County. Id. at ¶¶ 18-19. Plaintiff alleges that Walker admitted that she did not investigate J&S or its extradition agents prior to contracting with J&S. Id. at ¶¶ 20-21.

On or about February 22, 2011, Sam Wright, a J&S extradition agent, arrived at the Tucson federal facility to transport Plaintiff to Sebastian County. Id. at ¶ 22-23. Both Plaintiff and USP Tucson medical staff informed Wright that Plaintiff suffered from chronic asthma, edema, bipolar disorder, and a hypertension condition that required monitoring. Id. at ¶ 23. Wright was also informed that Plaintiff was prescribed Lisinopril, Hydrochlorothiazide, Elavil,

and Flovent and Proventol asthma inhalers. Id. at ¶ 24. Plaintiff was required to take this medication during transportation. Id. Wright was also advised that Hydrochlorothiazide caused frequent urination. Id., Exhibit A at 47.

Plaintiff was handcuffed, belly-chained, shackled, and placed in the rear of a transport van "in a four foot by two foot cage". Id. at ¶ 25. Plaintiff requested to be placed in the side of the van because he was previously a passenger in a transport van that was rear-ended. Id. at ¶ 26. Wright denied that request and "tapped" the van's brakes whenever vehicles were near its rear. Id. at ¶¶ 26, 28.

The next day, Wright stopped in the parking lot of a convenience store and slept. Id. at ¶ 29. Plaintiff alleges that this left him, "prone to unseen dangers or other harm that could have occurred during that time". Id. Plaintiff was unable to sleep in the rear of the van. Id. at ¶ 30. Before their departure, Wright allowed Plaintiff to urinate, but did not allow him to defecate. Id. at ¶ 31. Wright also denied Plaintiff's request to stretch his cramping legs. Id. at ¶ 32.

Wright next stopped at a McDonald's restaurant and gave Plaintiff a small cup of water, a small sausage biscuit, and permitted him to take his medications. Id. at ¶ 33. Later, Plaintiff asked to use the restroom, but Wright denied that request, noting that they were approximately an hour from their destination. Id. at ¶ 34. Plaintiff alleges that he was thus forced to urinate in the McDonald's cup before his arrival in Sebastian County. Id.

In March 2011, Walker again contracted J&S to return Plaintiff from Sebastian County to USP Tucson. Id. at ¶ 35. On March 31, 2011, Wright retrieved Plaintiff for transportation back to Arizona. Id. at ¶ 36. Wright was advised again of Plaintiff's medical condition. Id. at ¶ 37. Wright also transported another inmate along with Plaintiff. Id. at ¶ 38. Wright departed from Sebastian County, allegedly "swerving all over the road, driving erratically and dangerously."

Id. at ¶ 39. Wright stopped at a convenience store and separately escorted each inmate to the restroom, leaving one inmate unsupervised. Id.

Wright stopped in the parking lot to sleep and "left himself [Wright] and [the] two other prisoners prone to unsafe conditions, and potentially hazardous conditions." Id. at ¶ 40. According to Plaintiff, Wright "had the heat up excessively for a long period of time," causing Plaintiff and the other inmate to sweat profusely. Id. at ¶ 41. Wright initially denied the inmates' several requests to reduce the temperature, but later complied. Id.

Plaintiff informed Wright that he was experiencing swelling in his hands and feet due to edema. Id. at ¶ 42. Plaintiff asked Wright to loosen his shackles to alleviate the swelling, but Wright refused. Id. As a result, Plaintiff suffered severe headaches due to his hypertension and the swelling. Id. at ¶ 43. Plaintiff informed Wright of the swelling and that his blood pressure needed to be monitored, but Wright ignored him. Id.

On April 1, 2011, Plaintiff was placed in a holding cell in Louisiana. Id. at ¶ 44. While there, Plaintiff suffered a nose bleed, and a nurse found Plaintiff's blood pressure to be 140/100. Id. at ¶ 46. Plaintiff complained of pain and blistering in his feet, and the nurse determined that the blisters were caused by perspiration and Plaintiff not regularly changing his socks. Id. at ¶¶ 47-48. According to Plaintiff, Wright did not allow Plaintiff the opportunity at any time to wash his hands after use of the restroom, brush his teeth, or perform the most basic hygiene. Id. at ¶ 49. Plaintiff stayed the night in the holding cell and was not allowed to shower or shave. Id. at ¶ 50. Nor was he allowed to have a blanket or a mat to rest. Id.

The next morning, Plaintiff informed Wright of his blood pressure condition and told Wright that he was unable to sleep the night before. Id. at ¶ 51. Wright did not seek any instructions from the jail staff regarding Plaintiff's health before departing. Id. at ¶¶ 52-53.

Wright stopped at a rest area in Missouri to allow Plaintiff to urinate after repeated denials. Id. at ¶¶ 54-55. Wright did not allow Plaintiff to defecate, causing Plaintiff severe stomach cramps. Id. at ¶ 56. Plaintiff "was handcuffed, shackled, and belly-chained with no means of protection," and Wright left his weapon in the van while he escorted Plaintiff by civilians on the way to the restroom. Id. at ¶ 55. After exiting the restroom, Plaintiff informed Wright that his legs and feet were swelling and that the shackles were too tight, but Wright denied Plaintiff's request to loosen his shackles, resulting in pain in Plaintiff's right leg. Id. at ¶ 57. Plaintiff then lay on his back upon returning to the van, in an effort to ease the pain and swelling. Id. at ¶ 58. Wright then slept in the van, "with civilians all around him taking (sic) unreasonably dangerous risk with the plaintiff's safety and wellbeing." Id. at ¶ 59. Again, Plaintiff was unable to sleep. Id. at ¶ 60. Plaintiff requested to use the restroom when Wright awoke several hours later. Id. at ¶ 61. Wright allowed Plaintiff to urinate and placed him in the side cage of the van. Id.

Plaintiff also complained that he was left unprotected when Wright went into a convenience store, handcuffing Plaintiff to a fuel pump and having Plaintiff pump fuel into the van. Id. at ¶¶ 64-66. Wright stated that he read Plaintiff's legal documents and asked Plaintiff to draft legal documents in connection with Wright's child support, child custody, and child visitation action. Id. at ¶¶ 69, 72-74. Plaintiff denied Wright's request. Id. at 75. Wright allegedly became angry and sprayed an aerosol deodorant into the rear of the van. Id. at ¶¶ 75-76. Plaintiff experienced headaches and difficulty breathing from exposure to the spray. Id. at ¶ 77. Plaintiff told Wright of his condition and requested his asthma inhalers, but his request was denied by Wright. Id. at ¶ 77-78.

An hour later, Wright allowed Plaintiff to exit the van and use the restroom. Id. at ¶ 79. Wright promised he would allow Plaintiff to use his inhalers, to smoke, and to converse with civilian females at rest stops if Plaintiff assisted him with the child support action. Id. at ¶ 80. Plaintiff agreed, as he feared angering Wright. Id. at ¶ 81.

Wright then partially un-cuffed Plaintiff, giving him a notebook and a pen to draft documents in the child support action. Id. at ¶ 82. Wright then stopped at a restaurant, leaving the Plaintiff, "unattended, unsupervised, unprotected, and uncuffed in [the] van with it's (sic) windows up." Id. at ¶ 83. Wright gave Plaintiff a dessert upon his return. Id. at ¶ 84. Wright stopped a few hours later to purchase a cup of coffee, but refused Plaintiff's request for lunch, informing Plaintiff that he was only required to supply Plaintiff with fourteen grams of food per day. Id. at ¶ 85.

At the next stop, Wright asked Plaintiff "how long it had been since he had engaged in sexual relations." Id. at ¶ 89. Plaintiff alleges that Wright invited Plaintiff to masturbate before him. Id. at ¶ 90. Wright later told Plaintiff that if he could have someone send $150 to Plaintiff, Wright would deliver Plaintiff directly to USP Tucson. Id. at ¶ 97. Plaintiff gave Wright his sister's telephone number and address, and Wright sent a text message, posing as Plaintiff, requesting her to send $350 by Western Union. Id. at 98. Plaintiff's sister agreed. Id.

Plaintiff again asked to use the restroom. Id. at ¶ 102. Wright denied his request, and Plaintiff relieved himself in a 20 ounce bottle. Id. At the next stop, Wright again invited the Plaintiff to masturbate before him. Id. at ¶ 103. After Plaintiff declined, Wright masturbated in front of Plaintiff. Id. at ¶¶ 103-105.

On April 3, 2011, Plaintiff arrived at USP Tucson. Id. at ¶ 106. Wright threatened Plaintiff to direct Plaintiff's sister to send the money to Wright. Id. Plaintiff however

telephoned his sister and advised her not to send the money. Id. at ¶ 107. Plaintiff alleges that he was not allowed to wash his hands after use of the restroom, "to shave, shower, brush his teeth or complete even the basic human needs". Id. at ¶ 108. Plaintiff further alleges that "when he was fed, [he] was deprived of adequate meals." Id. at ¶ 110.

**B.    Conclusions of Law**

Pro se pleadings are to be liberally construed. Martin v. Overton, 391 F.3d 710, 712 (6th Cir.2004) (citing Haines v. Kerner, 404 U.S. 519 (1972)). "Notwithstanding, pro se complaints must satisfy basic pleading requirements because 'liberal construction does not require a court to conjure allegations on a litigant's behalf.'" Rahman El v. First Franklin Financial Corp., No. 09-cv-10622, 2009 WL 3876506, at *5 (E.D.Mich. Nov. 17, 2009) (citing Martin, 391 F.3d at 714); see also Copeland v. Ocwen Bank, No. 06-14817, 2007 WL 496448 (E.D. Mich. Feb. 12, 2007) ("Even pro se litigants must meet minimum standards...The court is 'not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions.'") (citations omitted).

Under Rule 60(b) of the Federal Rules of Civil Procedure, a court may relieve a party from a final judgment, order or proceeding where the party shows:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"To be eligible for relief under 60(b)(1), a movant must demonstrate that he has a meritorious claim or defense, in addition to showing the existence of mistake, inadvertence,

7

surprise, or excusable neglect". Brown v. White, No. 96-3610, 1997 WL 570399 at *2 (6th Cir. Sept.11, 1997). Rule "60(b)(6) should be used only in exceptional or extraordinary circumstances and can be used only as a residual clause in cases which are not covered under the first five subsections of Rule 60(b)". Pierce v. United Mine Workers of America Welfare and Retirement Fund, 770 F.2d 449, 451 (6th Cir.1985) (citations omitted). "[R]elief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation'". Ford Motor Co. v. Mustangs Unlimited, Inc., 487 F.3d 465, 468 (6th Cir. 2007) (citations omitted).

After reviewing Plaintiff's motion for reconsideration, and the filing in support thereof, the Court concludes that Plaintiff fails to raise any valid grounds to amend or vacate the Court's judgment under Rule 60(b). Plaintiff does not establish any of the criteria under Rule 60(b). Plaintiff merely re-alleges his claims against J&S, Wright, Buchanan, and Plung. (Docket Entry No. 125 ¶ 14). Plaintiff fails to allege physical injuries sufficient to state a claim.

> The Prison Litigation Reform Act [("PLRA")] provides that "[n]o Federal civil action maybe brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) [("Section 1997")]. Even though the physical injury required by 42 U.S.C. § 1997e(e) for a Section 1983 claim need not be significant, it must be more than de minimis for a claim to go forward. Flanory v. Bonn, 604 F.3d 249,254 (6th Cir.2010).

Dorsey v. Metro. Gov't, No. 3:11-0111, 2011 WL 2118269, at *1 (M.D.Tenn. Apr. 14, 2011) (Report and Recommendation adopted May 25, 2011). Plaintiff was a "prisoner" within the ambit of the PLRA while in J&S custody. Robinson v. PTS of Amer., No. 3:06-0033, 2006 WL 1083397, at *4 (M.D.Tenn. Apr. 24, 2006); see also Quinlan v. Pers. Transp. Serv. Co., 329 Fed.Appx. 246, 248-49 (11th Cir. 2009).

8

> The Constitution does not protect a prisoner from unpleasant prison experiences. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987). Nor does the Constitution mandate comfortable conditions of confinement. *Rhodes*, supra at 101 S.Ct. 2400. It necessarily follows, then, that a prisoner has not been subjected to cruel and unusual punishment simply because he has been made to feel uncomfortable during the course of a transfer from one prison to another. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995) (a prisoner's mere discomfort, without more, does not offend the Eighth Amendment).

Waller v. Transcor Am., No. 3:07-0171, 2007 WL 3023827, at *3 (M.D.Tenn. Oct. 11, 2007).

Here, Plaintiff traveled a total of five days before returning to USP Tucson. "[Plaintiff] was not mistreated in violation of the Eighth Amendment simply because [Wright] failed to drive him directly" from Arkansas to USP Tucson. Id. (citing Zanzucchi v. Wynberg, 933 F.2d 1018, 1991 WL 83937, at *2 (9th Cir. May 21, 1991) (holding that there was no deliberate indifference to prisoner's existing medical condition where he was transported on a bus for 18 days with his hands and ankles restrained after being approved for transportation by any means)); see also Juliano v. Camden County Dept. of Corrections, Civil Action No. 06-110 (FLW), 2006 WL 1210845 (D.N.J. May 3, 2006) (holding that there was no Eighth Amendment violation where the prisoner was handcuffed, leg-shackled to another inmate, and transported for 10 days on a bus cross-country); see generally Jensen v. Jorgenson, No. Civ. 03-4200, 2005 WL 2412379 (D.S.D. Sept. 29, 2005) (holding that there was no Eighth Amendment violation without an actual injury where a prisoner in transportation van was chained and handcuffed, not given a bathroom break for 12 hours, and subjected to excessive heat).

Plaintiff first alleges that Wright intentionally aggravated his asthma condition and denied him the use of his asthma inhalers. (Docket Entry No. 29 at ¶¶ 76-78). Yet, Plaintiff has not sufficiently alleged his asthma condition to be a serious health condition, nor has he alleged any type of injury arising from Wright's alleged misconduct. Asthma that "[can] be managed 'with the use of inhalers and other medication...,'" is not a serious health condition for the

9

purposes of the Eighth Amendment. Jones v. Caruso, 421 Fed.Appx. 550, 552 (6th Cir. 2011) (footnote omitted). Plaintiff has not alleged that exposure to the spray represented a "'serious health threat,' rather than a 'mere discomfort.'" Id. (citation omitted).

Plaintiff cites Wilkins v. Gaddy, 130 S.Ct. 1175 (2010), stating that the "'core judicial inquiry,' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 1178. Wilkins applies to Plaintiff's claims of excessive force, but not as to claims concerning conditions of confinement.

> Allegations about the physical conditions encountered in [transportation] vans, as well as the provision of food and drink during...transport trips, fall within the category of condition of confinement claims, governed by the standards set out in Rhodes. On the other hand, allegations about the severity and manner of being restrained during the transportation trips fall within the category of the use of excessive force claims, governed by Whitley and Hudson and their progeny. The distinction is important because, while the prohibition against the unnecessary and wanton infliction of pain underlies both types of claims and both types of claims have an objective and subjective component, the applicable tests used to analyze each type of claim are somewhat different. See Thaddeus-X v. Blatter, 175 F.3d 378, 400-401 (6th Cir. 1999).
> * * *
> In the context of "conditions of confinement" cases, the Eighth Amendment is concerned only with "deprivations of essential, food, medical care or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348. To satisfy the objective prong for such claims, extreme deprivations are required," Hudson, 503 U.S. at 9, and only grave deprivations of the civilized measure of life's necessities violate the Cruel and Unusual Punishment Clause. Rhodes, supra; Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004).

Myers v. Transcor Amer., No. 3:08-0295, 2010 WL 3619831, at *8 (M.D.Tenn. Sept. 9, 2010) (Report and Recommendation adopted Sep. 30, 2010). Plaintiff "does not allege that he sought or received medical attention for his asthma following the transport. Courts have held that such complaints are no more than a de minimis injury." Shain v. Grayson County, No. 4:11CV-P84-M, 2011 WL 5122667, at *4 (W.D.Ky. Oct. 28, 2011) (citations omitted).

10

Thus, even if Plaintiff's asthma condition were sufficiently serious, and Wright had wantonly inflicted discomfort upon Plaintiff, it does not appear that the acts complained of "required immediate medical attention or evidence[d] physical injury besides discomfort." Quinlan, 329 Fed.Appx. at 249 (holding that temporary chest pain, headache, back pain, difficulty breathing, and a denial of the prisoner's request to use asthma inhaler during transport van ride were no more than de minimis injuries that barred a Section 1983 claim under the PLRA).

Plaintiff further alleges that Wright "violated [Plaintiff's Eighth Amendment rights] by denying the Plaintiff the right to use the restroom and causing him to [relieve] himself in a bottle and a [cup]." (Docket Entry No. 29 at ¶ 114). Plaintiff alleges that throughout the trip, Wright denied him adequate use of the restroom, specifically not allowing him to defecate. Id. at ¶¶ 31, 34, 54, 56, 102. Yet, Plaintiff admits that Wright allowed Plaintiff to use the restroom throughout the trip. Id. at ¶¶ 31, 39, 55, 61, 79.

Plaintiff also alleges Wright, "[subjected] the plaintiff to excessive periods of heat without proper ventilation…[and allowed] the heat to remain on for excessive periods of time…" Id. at ¶¶ 115-116. Yet, Plaintiff admits that Wright "turned the heat down" after his repeated requests, and that he was left for a total of "[twenty] minutes…in [the] van with it's (sic) windows up, no ventilation…" Id. at ¶ 41, 83.

Plaintiff further alleges that he was not allowed at any time to shave, wash his hands, shower, brush his teeth or perform the most basic human needs, nor was he allowed to sleep in a bed, have a blanket, or change his clothes. Id. at ¶¶ 49-50, 117. Plaintiff also alleges that he developed "white blisterish pockets forming on the bottoms of the [his] feet" because he was not allowed to change his socks. Id. at ¶ 48. Yet, Plaintiff "has not alleged any significant health

11

condition that arose because of a lack of opportunities to maintain personal hygiene during his transfer." Waller, 2007 WL 3023827, at *4; see McCorkle v. Walker, 871 F.Supp. 555, 557 (N.D.N.Y.1995) (Eighth Amendment was not violated where a prisoner was not allowed to change his underwear for 15 days). Further, there is not any allegation that Wright intentionally prevented Plaintiff from getting rest or sleep. Sleeplessness caused by uncomfortable conditions "fails to rise to the level of constitutional magnitude." Dorsey, 2011 WL 2118269, at *2.

Plaintiff also alleges that Wright slept in the van or abandoned the Plaintiff at various rest stops, leaving "himself and the plaintiff prone to unseen dangers or other harm" or "potentially hazardous conditions." (Docket Entry 29 at ¶¶ 29, 40, 59, 66, 83). Yet, Plaintiff "has not alleged any specific facts which would show that he was in danger of being assaulted by the other inmates [or third persons]. At most, [Plaintiff] has alleged a hypothetical risk of danger to his safety" during rest stops. Lewis, 7 Fed.Appx. at 375. Exposure to hypothetical danger does not rise to the level of an Eighth Amendment violation for placing an inmate in substantial risk of serious harm. Id.

Plaintiff also alleges that Wright violated his Eighth Amendment rights by "denying the plaintiff adequate meals on April 03, 2011 for breakfast and lunch", and "by denying the plaintiff proper exercise when medical circumstances required it." (Docket Entry No. 29 at ¶¶ 123, 112). Yet, Plaintiff acknowledges that he consumed meals and beverages on both segments of the trip. Id. at ¶¶ 33, 84. Further,

> [e]ven construing the complaint liberally, the plaintiff's allegations regarding the lack of recreation time **on a single day** do not rise to level of an Eighth Amendment violation. Even if the plaintiff was deprived of recreation time on one day, such a deprivation is not 'sufficiently serious' to constitute an actionable violation of Section 1983. The plaintiff does not allege that there are ongoing restrictions on the amount of recreation time—outdoor or indoor—he is permitted. The court cannot conjure up facts not pleaded in the complaint.

12

Hobson v. Greenwood, No. 3:11-cv-00443, 2011 WL 2181318, at *2 (M.D.Tenn. Jun. 3, 2011) (emphasis in original).

Plaintiff's allegations are similar to conditions of confinement allegations made by plaintiffs in Myers, 2010 WL 3619831. The analysis in that action applies here.

> Even if the Court takes as true the allegations that the transport vans were extremely hot or cold and were dirty and noisy, that the inmates being transported were fed infrequently and had difficulty eating and drinking because of the manner of being restrained, and that the inmates being transported were given infrequent bathroom breaks, these allegations simply fail to evidence the type of living conditions which are so extreme as to violate contemporary standards of decency and, thus, the objective component of the Eighth Amendment claim has not been satisfied. There is no evidence that any of the complained about conditions caused actual harm to the transported inmates or created a substantial risk of serious harm to them. There is no evidence that the plaintiffs were totally deprived of either food or bathroom breaks.

Myers, 2010 WL 3619831, at *9 (footnote omitted).

Thus, the Court concludes that Plaintiff's conditions of confinement claims fail to rise to the level of Eighth Amendment violations for cruel and unusual punishment.

Plaintiff also asserts an excessive force claim, alleging that Wright "violated the plaintiff's constitutionally protected rights by refusing to loosen the plaintiff's shackles as a result of the swelling", causing him "extensive pain." (Docket Entry No. 29 at ¶ 131). "Security concerns dictate that prison officials may place an inmate in restraints while moving him from one place to another." Waller, 2007 WL 3023827, at *4 (citing Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.1996)). "There is no claim, however, nor does the complaint suggest, that the plaintiff was not medically cleared to proceed with his transfer while in restraints. Of course, the restraints made it difficult for the plaintiff to be comfortable during his transfer. But these claims come nowhere near the level of a wanton and intentional infliction of pain necessary to establish

an Eighth Amendment deprivation." Id. Plaintiff's excessive force claims do not rise to the level of an Eighth Amendment violation.

Thus, the Court concludes that Plaintiff fails to state a claim for sufficient physical injury under the PLRA, and therefore has not established grounds to amend or vacate the Court's judgment under Rule 60(b). For the reasons stated above, the Court concludes that Plaintiff's motion for relief from judgment (Docket Entry No. 125) should be denied, and all other motions should be denied, as moot.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of May, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge